## N. C. Williams v. The State.

### *No. 732.   Decided June 15.*

Swindling—Fact Case—Evidence Insufficient.—See facts stated in the opinion, which are held to be insufficient to support a conviction for swindling.

Appeal from the County Court of Milam.   Tried below before Hon. Sam Streetman, County Judge.

This appeal is from a conviction for swindling, wherein the punishment assessed was imprisonment in the county jail for twenty days, and a fine of $150.

The opinion states the case.

No briefs for appellant have come to the hands of the Reporter.

*Mann Trice,* Assistant Attorney-General for the State.

DAVIDSON, JUDGE.—Appellant was convicted of swindling, the punishment being imprisonment in the county jail and a fine. The evidence shows, that appellant went from Waco to Milam County to purchase stock for one J. M. Gray, who lived at Waco, and was engaged in buying and shipping cattle and hogs. He carried a letter, signed by said Gray, authorizing him to buy cattle for and draw drafts on him, with bills of sale attached. He bought for Gray several lots of hogs, at and near Milano, and through the Milam County Bank, at Cameron, drew on Gray for $350, with which to pay for them. He exhibited the letter of Gray to the bank, and in this connection a member of this bank testified, that "I told him to go ahead, buy the hogs, and draw checks on our bank to pay for them; and by the time they would be presented on our bank the money would be here to pay for them." Appellant then returned to Milano, fourteen miles distant, drew checks on said Milam County Bank in favor of the vendor of the hogs, and shipped said hogs to Gray, who sent them to Fort Worth and there sold them. The vendor of the hogs knew appellant was purchasing for Gray, and not for himself. Gray failed to put the money in the bank, and the checks were not paid; hence this prosecution. Appellant was not aware of Gray's failure to honor the checks drawn through said bank. The hogs were bought in small lots from various parties. The hogs brought in Fort Worth the sum of $328. The excuse given by Gray for not honoring appellant's draft was that the bills of sale did not accompany the draft. He, however, received the hogs and forwarded them to Fort Worth, thus ratifying the purchase and acts of appellant. It is further shown that J. M. Ralston, appellant's attorney, after appellant's arrest and incarceration for this offense, went to Waco, saw Gray, and importuned him to pay off the claims for the purchase of the hogs; that Gray was unwilling to do so, because the hogs brought less than amount of the draft; that he, however, finally agreed to and did draw a draft on a bank in Caldwell, Burleson County, for $325 in favor of appellant; that on his return to Cameron said Ralston carried the draft to appellant in jail, had him to indorse it to him, Ralston, who collected $127.60 on said draft, less expense of collection. This was all that could be secured, and, not being sufficient in amount to settle the amount due for the hogs, was turned over by appellant to his attorney, in payment of services for defending him in this and four other prosecutions growing out of the purchase of

the hogs in question.    This transaction occurred after appellant's arrest and incarceration on the five charges of swindling in obtaining the hogs.

We do not think the fact that appellant failed to turn over this $127.60 in payment of the hogs, under the circumstances detailed, is sufficient to show in the face of all the other facts, that he had a fraudulent intent in obtaining the hogs.   The transaction on the part of Gray by which the Caldwell bank obtained the $127.60 of his money occurred subsequent to the hog transaction, and grew out of the purchase of cattle by Gray after the sale of the hogs in question in Fort Worth. The other evidence in the case is undisputed that appellant left the bank at Cameron under the impression and with the promise that his checks would be honored when presented; that he had a clear right to so believe, because the bank had so informed him; that he bought the hogs for Gray and not for himself, and this was not disputed, and was known to the parties from whom appellant purchased the hogs; that Gray accepted the hogs, thus ratifying the trade, and that appellant obtained no benefit from the transaction whatever; that he urged Gray to pay off the drafts; that Gray declined only because the hogs did not realize the amount of the draft drawn through the Milam County Bank; that appellant acquired no interest in or title to the hogs, or any part thereof; and that the draft for $127.60, collected by appellant on Gray's draft for $325, arose out of another and subsequent transaction, and one in nowise connected with the first, and one not in contemplation by the parties at the time of the first transaction.    It would be very unreasonable to say that appellant would swindle these people for Gray's benefit.    Under this record, we think the evidence rebuts a fraudulent intent on defendant's part to acquire the hogs or any part thereof for himself.    Nor does it appear that Gray and appellant were acting together for this purpose.    We are unwilling to affirm this judgment on the statement of facts before us.

The judgment is reversed, and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.